IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DIANA D. MYLES, Individually And As**                          **PLAINTIFF**
**Administrator Of The Estate of Johnny**
**Lee Myles And For And On Behalf Of All**
**Other Parties Entitled To Recover For The**
**Wrongful Death Of Johnny Lee Myles,**
**Deceased**

**V.**                                           **NO. 4:14-CV-00107-DMB-JMV**

**DOMINO'S PIZZA, LLC, A Foreign**
**Corporation; and WAYMOND JAMES,**
**An Individual**                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This automobile collision case is before the Court on the joint motions of Domino's Pizza, LLC, and Waymond James (1) to dismiss for lack of subject matter jurisdiction, Doc. #67; and (2) for partial summary judgment, Doc. #50; Doc. #69. Because Diana Myles lacks statutory standing to pursue this wrongful death action, the motion to dismiss will be granted and the motions for partial summary judgment will be denied as moot.

**I**
**Procedural History**

**A. Chancery Court Proceedings**

On January 7, 2013, Diana Myles filed in the Chancery Court of Bolivar County, Mississippi, a "Petition for Appointment of Administratrix and for Issuance of Letters of Administration." Doc. #72-1 at 1. The petition represented that Diana[1] was the widow of the decedent Johnny Lee Myles, who passed away in an automobile accident on December 30, 2012.

---

[1] To avoid confusion, the Court will refer to those members of the Myles family with the same last names by their first names.

*Id*. The petition listed five children and declared "that the principal asset of the estate is a chose in action for the wrongful death of the decedent." *Id*. at 2–3.

On January 9, 2013, the Chancery Court appointed Diana as Administratrix. Doc. #68-1 at 12–13. The following day, Diana filed a "Petition for Determination of Heirs at Law and Wrongful Death Beneficiaries." Doc. #72-2 at 1. This petition sought to designate as heirs and wrongful death beneficiaries: (1) Diana, as wife; (2) Johnnie Carmicle, as a son; (3) Ketrick Douglas, as a son; (4) Amesha Myles, as a daughter; (5) Kaquisha Myles, as a daughter; and (6) Shaunessia Douglas, as a daughter. *Id*. at 2. On February 21, 2013, the Chancery Court determined the persons listed in the January 10 petition to be Johnny's "sole and only heirs at law ... and his sole and only statutory wrongful death beneficiaries ...." Doc. #72-3.

### B. Filing of This Action

On July 28, 2014, Diana filed a complaint in this Court "Individually And As Administrator Of The Estate Of Johnny Lee Myles And For And On Behalf Of All Other Parties Entitled To Recover For The Wrongful Death Of Johnny Lee Myles, Deceased." Doc. #1. The complaint sought recovery from Waymond James and Domino's Pizza, LLC ("Domino's"), for the injury and death suffered by Johnny when a vehicle driven by him collided with a commercial vehicle owned by Domino's and driven by James. *Id*.

On September 2, 2014, Domino's filed a motion to dismiss the original complaint. Doc. #4. On September 22, 2014, Diana filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Doc. #7. Diana's amended complaint asserted a negligence claim against James for his role in the collision and multiple claims against Domino's based on its alleged oversight and control of James and his vehicle. *Id*.

On October 5, 2014, Domino's filed a motion to dismiss the amended complaint, Doc.

#9; and on October 17, 2014, Diana responded in opposition, Doc. #11. On October 29, 2014, James filed a "Notice of Joinder," purporting to join and adopt the motion to dismiss the amended complaint. Doc. #22.

On May 5, 2015, this Court entered an order: (1) denying the motion to dismiss the original complaint as moot; (2) finding James' joinder to be untimely; and (3) granting in part and denying in part Domino's motion to dismiss the amended complaint. Doc. #30. The Court, noting that "neither Domino's memorandum nor the motion to dismiss itself addresses any claims other than conspiracy and aiding and abetting," dismissed for failure to state a claim the claims for conspiracy and aiding and abetting but denied the motion in all other respects. *Id*. at 4, 9.

### C. Discovery and Dispositive Motions

After the Court's disposition of the motion to dismiss, the parties engaged in a period of discovery during which Diana, in a May 12, 2016, deposition, testified that she and Johnny were married at the courthouse in Helena, Arkansas, on November 25, 1995,[2] before a state court judge named Don Gentry. Doc. #68-1 at 20–21.

On May 19, 2016, Domino's and James filed a motion for partial summary judgment. Doc. #50. With leave of the Court, Diana filed a second amended complaint on July 5, 2016.[3] Doc. #62. The second amended complaint, like the previous two complaints filed in this action, purports to be brought by Diana "Individually And As Administrator Of The Estate Of Johnny

---

[2] This testimony conflicted with an earlier response to an interrogatory in which Diana represented that she married Johnny on November 24, 1995.

[3] On June 8, 2016, this Court issued an order directing Diana to show cause why her complaint should not be dismissed for lack of subject matter jurisdiction. Doc. #59. On June 22, 2016, Diana responded to the order to show cause and moved for leave to file a second amended complaint for the purpose of establishing diversity jurisdiction. Doc. #60; Doc. #61. United States Magistrate Judge Jane M. Virden granted Diana's motion to amend on June 29, 2016.

Lee Myles And For And On Behalf Of All Other Parties Entitled To Recover For The Wrongful Death Of Johnny Lee Myles, Deceased." *Id*.

On September 13, 2016, the defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Doc. #67. The motion and accompanying memorandum argue that, contrary to her testimony, Diana was never married to Johnny. *Id*; Doc. #68. Six days later, the defendants filed a second motion for partial summary judgment. Doc. #69. Diana responded to the motion to dismiss on September 30, 2016, and to the second motion for partial summary judgment on October 7, 2016. Doc. #71; Doc. #73. The defendants replied in support of their motion to dismiss on October 7, 2016, and in support of their second motion for partial summary judgment on October 13, 2016. Doc. #75; Doc. #76.

## II
## Applicable Standard

In seeking dismissal for lack of subject matter jurisdiction, the defendants, citing depositions and other evidence, argue that Diana lacks standing to pursue this action.

### A. Federal Standing Doctrines

In the federal courts, Article III "standing is perhaps the most important of the jurisdictional doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (internal quotation marks and alterations omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

4

"Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government." *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). "One principle of prudential standing requires that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id*. "[P]rudential standing, while not jurisdictional, nonetheless affects justiciability." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 n.4 (5th Cir. 2013); *but see Superior MRI*, 778 F.3d at 506 (rejecting argument that recent United Supreme Court precedent "prevents this court from applying the prudential standing doctrine as a jurisdictional bar"). Beyond the Article III and prudential standing inquiries, under a statutory standing inquiry, a court asks whether a plaintiff "has a cause of action under [a particular] statute." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 & n.4 (2014). "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

### B. Issue Here

In seeking dismissal, the defendants contend that Diana was never married to Johnny and that, therefore, she "lacks standing under Mississippi's wrongful death statute." Doc. #68 at 5–7. Additionally, the defendants submit that Diana lacks standing to bring this action as Administratrix of Johnny's estate because she obtained her appointment as Administratrix through fraud.[4] *Id*. at 7–8.

---

[4] In a single paragraph, the defendants argue that "it is also appropriate for this Court to dismiss this action with prejudice in light of Plaintiff's false representations in court proceedings." Doc. #68 at 9. In support, the defendants cite *Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011), for the broad proposition that "false testimony

5

Mississippi's wrongful death statute provides that an action for wrongful death:

> may be brought in the name of the personal representative of the deceased person or unborn quick child for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child or unborn quick child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits.

Miss. Code Ann § 11-7-13. The Mississippi Supreme Court has held that authorization to sue under the wrongful death statute is an issue of standing. *See Burley v. Douglas*, 26 So.3d 1013, 1016 (Miss. 2009) ("This Court's analysis of who has standing to bring a wrongful-death action must necessarily begin and end with Mississippi's wrongful-death statute ...."). Lower courts in Mississippi have treated authorization to sue under the wrongful death statute as a jurisdictional issue. *See, e.g., Tolliver ex rel. Green v. Mladineo*, 987 So.2d 989, 995 (Miss. Ct. App. 2007) ("Although the decedent's brother, Malone, brought the wrongful death claim within the applicable statute of limitations, his complaint lacked standing. This lack of standing robs the court of jurisdiction to hear the case.") (internal quotation marks omitted). However, "state-court determinations of standing are not binding on the lower federal courts." *United States ex rel.*

---

under oath" justifies dismissal with prejudice. *Id.* at 9–10. In *Brown*, the Fifth Circuit held that "[u]nder this circuit's precedent, we ordinarily will affirm a dismissal with prejudice only if: (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the best interests of justice." 664 F.3d at 77 (internal quotation marks omitted). However, the Fifth Circuit cautioned that "the facts of each case largely determine the appropriateness of dismissal." *Id.* In their motion to dismiss, the defendants make no effort to tie the authority in *Brown* to the specific facts of this case beyond saying that both cases involve false testimony. Under these circumstances, the Court deems the argument waived. *See El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

*Daneff v. Henderson*, 501 F.2d 1180, 1183 (2d Cir. 1974); *see Coleman v. Miller*, 307 U.S. 433, 466 (1939) ("[I]t by no means follows that a state court ruling of the adequacy of legal interest is binding here.").

In this case, the defendants' arguments relate to Diana's ability to bring this wrongful death action under Mississippi's wrongful death statute and, relatedly, whether Diana is asserting rights which do not belong to her under the statute. The defendants' arguments do not implicate Diana's standing under Article III but rather Diana's statutory and prudential standing to pursue the wrongful death action at issue here. *See Lawrence v. City of San Bernardino*, No. 12-1112, 2005 WL 5950105, at *10 (C.D. Cal. July 27, 2005) (siblings' inability to bring wrongful death action under state wrongful death statute implicated statutory standing); *Williams v. United States*, 477 F. App'x 9, 11 n.1 (3d Cir. 2012) ("The District Court did not address [plaintiff's] argument that her father has statutory standing to recover for his son's allegedly wrongful death under Pennsylvania law."). *See Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, No. 2:11-cv-856, 2013 WL 4516007, at *2 (W.D. La. Aug. 22, 2013) ("As noted by the Fifth Circuit ..., a dismissal based on lack of [statutory] standing should be construed as a motion to dismiss ... under Rule 12(b)(6) ....") (citing *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, 544 F. App'x 455 (5th Cir. 2013)).

### C. 12(b)(6) Standard

"A motion to dismiss for lack of standing may be either 'facial' or 'factual.'" *Superior MRI Servs., Inc.*, 778 F.3d at 504 (prudential standing case). Where, as here, "the defendant submits affidavits, testimony, or other evidentiary materials" in support of the motion, the attack on standing is considered factual. *Id.* (internal quotation marks omitted). "To defeat a factual attack, a plaintiff must prove the existence of [standing] by a preponderance of the evidence and

7

is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Id.* (internal quotation marks omitted); *Niemi v. Lasshofer*, 728 F.3d 1252, 1261 (10th Cir. 2013) ("The burden of proving statutory standing rests on the plaintiffs' shoulders ….").

## III
## Analysis

Under the Mississippi wrongful death statute, "a wrongful-death action may be brought: (1) by the personal representative on behalf of the estate and all other persons entitled to recover; (2) by one of the wrongful death beneficiaries ... on behalf of all persons entitled to recover; or (3) by all interested parties." *Clark Sand Co., Inc. v. Kelly*, 60 So.3d 149, 155 (Miss. 2011) (internal quotation marks, emphases, and footnote omitted). In seeking dismissal, the defendants argue that Diana may not bring this action because she is neither a wrongful death beneficiary, interested party, nor personal representative of Johnny. Doc. #68. Diana responds that the defendants' argument is barred by the probate exception doctrine to federal jurisdiction; that she "does not concede that she was not legally married to Johnny Myles;" and that, even if she were not legally married, she remains the valid representative of Johnny's estate. Doc. #72 at 4–5.

### A. Probate Exception

"Federal jurisdiction ordinarily exists over lawsuits that could have been brought in a state court, so long as complete diversity of citizenship and the requisite amount in controversy are present. For compelling historical reasons, however, a federal court has no jurisdiction to probate a will or administer an estate." *Breaux v. Dilsaver*, 254 F.3d 533, 536 (5th Cir. 2001) (internal citation and quotation marks omitted).

Diana argues that the defendants' motion interferes with the state probate proceedings because "it is wholly dependent on an attack of the validity of the Chancery Court proceeding" and that, therefore, "while the Court has subject matter over the Plaintiff's wrongful death claim,

8

it is precluded from considering whether the appointment of the Plaintiff as the estate representative is valid." Doc. #72 at 4–5. The defendants respond that the probate exception does not apply here because the probate exception does not apply to claims which could be brought in a court of general jurisdiction. Doc. #75 at 3–4.

As an initial matter, the Court is aware of no authority which supports Diana's argument that the probate exception can bar a defense but allow an underlying claim to proceed. Indeed, it is clear that, "[i]n determining whether a suit in federal court 'interferes' with state probate proceedings, this court considers whether *the plaintiff's claim* implicates the validity of the probate proceedings ...." *Dilsaver*, 254 F.3d at 536 (emphasis added and internal quotation marks omitted). What is less clear, however, is whether a defense to a plaintiff's claim can bring the claim itself within the probate exception so as to divest the court of jurisdiction.

At least one district court has held that an asserted defense invokes the probate exception as to the relevant claim. In *Berman v. Berman*, a plaintiff sued a trustee and his partner for an accounting and declaratory relief relating to alleged assets of a decedent. No. 07-2506, 2009 WL 1617758, at *1 (D.N.J. June 9, 2009). The defendants removed the case and answered, asserting as an affirmative defense and counterclaim that the will which formed the basis of the plaintiff's claims "was the product of undue influence by Plaintiff ...." *Id*. at *2. Acting on the plaintiff's motion to remand, the district court, citing the probate exception, held that "[b]ecause defendants seek a declaration that the will underlying Plaintiff's claim is void and unenforceable, the adjudication of this case would call upon the Court to determine whether or not to 'annul a will,' a determination which this Court lacks jurisdiction to entertain." *Id*. at *2 (internal citation omitted).

*Berman*'s approach, in which a defense to a claim can invoke the probate exception,

9

strikes this Court as most consistent with the probate exception's blanket prohibition that federal courts lack jurisdiction to probate a will or administer an estate. Additionally, it resonates with the approach applied by courts to the political question doctrine – an analogous jurisdictional rule which prohibits consideration of a class of cases.

Under the political question doctrine, a federal court lacks jurisdiction to decide a dispute which "involves a political question where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S.Ct. 1421, 1427 (2012) (internal quotation marks and alterations omitted). An asserted defense will deprive a court of jurisdiction under the political question doctrine if: (1) the defense is supported by "sufficient evidence;" and (2) the defense implicates a political question. *See Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 469 (3d Cir. 2013) ("If there is sufficient evidence to support the defense, then the District Court must determine whether the defense actually presents a nonjusticiable issue.").

While the probate exception and political question doctrines arise from different sources – the probate exception derives from the Judiciary Act of 1789[5] while the political question doctrine is based on Article III's requirement of justiciability[6] – both doctrines remove from federal jurisdiction a district court's ability to decide a particular species of case. In this regard, the Court finds the political question doctrine's treatment of defenses both analogous and persuasive, and holds that a claim must be dismissed for lack of jurisdiction under the probate exception if the defense is supported by sufficient evidence and if the defense would cause the

---

[5] *Marshall v. Marshall*, 547 U.S. 293, 308 (2006).

[6] *Spectrum Stores, Inc. v. Citgo Petro. Corp.*, 632 F.3d 938, 948 (5th Cir. 2011).

10

court to probate a will or administer an estate.

Here, the defendants argue in defense of Diana's claims that Diana lacks standing to pursue this action as a wrongful death beneficiary of Johnny because she was not married to Johnny. Doc. #68 at 6–7. The defendants further argue in defense that Diana lacks standing to pursue the action as Administratrix because her appointment as Administratrix should be set aside for fraud. *Id.* at 7–9.

### 1. Sufficient Evidence

As evidence of the lack of marriage, the defendants have introduced evidence showing that neither Arkansas (the alleged state of marriage) nor Mississippi (Johnny's state of residence) have record of a marriage between Johnny and Diana, and that the judge who allegedly officiated the marriage did not obtain his commission until approximately two years after the alleged marriage date. Doc. #68-1 at Ex. 6–8. The defendants have also introduced Chancery Court records showing that Diana obtained her appointment as Administratrix based upon a representation that she was married to Johnny at the time of his death. Doc. #68-1 at Ex. 1. There is no dispute that Diana's lack of marriage to Johnny would deprive her of statutory standing to pursue the wrongful death action as a wrongful death beneficiary. *Kelly*, 60 So.3d at 155. There is also no dispute that, if obtained through fraud, Diana's appointment as Administratrix would be subject to a collateral attack which would result in her removal as Administratrix. *City of Starkville v. Thompson*, 260 So.2d 191, 192 (Miss. 1972) ("Fraud vitiates everything, and a judgment obtained by fraud may be collaterally attacked, and this applies to the judgments and decrees of all courts.") (internal punctuation omitted). Under these circumstances, the Court concludes that there is sufficient evidence supporting the defendants' asserted defenses regarding Diana's statutory standing to invoke the probate exception, if

applicable.

## 2. Whether Defenses Implicate Probate Exception

The probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). Put differently, it removes from federal court jurisdiction "proceedings that 'interfere with' state probate proceedings, assume general jurisdiction of the probate, or assume control of property in the custody of the probate court." *Lemery v. Ford Motor Co.*, 244 F.Supp.2d 720, 725 (S.D. Tex. 2002) (collecting cases). As explained above, "[i]n determining whether a suit in federal court 'interferes' with state probate proceedings, this court considers whether the plaintiff's claim implicates the validity of the probate proceedings ...." *Dilsaver*, 254 F.3d at 536

"Removing and/or appointing a personal representative has the practical effect of impermissibly drawing the property of the estate into the jurisdiction of this court." *Jones v. Harper*, 55 F.Supp.2d 530, 533–34 (S.D.W.V. 1999) (citing *Byers v. McAuley*, 149 U.S. 608, 615 (1893)). Accordingly, "the appointment of personal representatives falls squarely within the probate exception." *Hassanati v. Int'l Lease Fin. Corp.*, 51 F.Supp.3d 887, 896 (C.D. Cal. 2014). In this case, adjudication of the standing defense based on Diana's status as Administratrix would call upon the Court to determine whether or not to invalidate the Chancery Court's order appointing Diana as the administratrix of Johnny's estate. Therefore, the Court must conclude that this action, to the extent it is purportedly brought by Diana in her role as

Administratrix of Johnny's estate, implicates the probate exception to federal jurisdiction.[7] *See generally Thomas & Agnes Carvel Found. v. Carvel*, 736 F.Supp.2d 730, 764 (S.D.N.Y. 2010) ("The probate exception to diversity jurisdiction thus applies to Ms. Carvel's expense claim since it precludes the use of the federal courts as a forum for a collateral attack on the rulings of a surrogate's court in allocating the assets and income of an estate."); *Alexander v. Tyson*, No. 3:11-cv-710, 2013 WL 1798896, at *3 (D. Conn. Apr. 29, 2013) ("[T]his court still cannot entertain a collateral attack on the judgment of a probate court by virtue of the probate exception to diversity jurisdiction.").

Although the removal of a personal representative clearly falls within the probate exception, there is no bar to this Court considering the other issue raised in the defendants' motion – whether Diana has statutory standing under Mississippi's wrongful death statute. As framed, the defendants' argument merely asks this Court to determine whether Diana is entitled to bring this action under the statute as a "widow for the death of her husband." While this determination may relate to issues before the probate court,[8] the probate exception does not

---

[7] "An exception to the general rule that federal courts are without jurisdiction to entertain matters affecting probate proceedings ... exists where a state by statute or custom gives parties a right to bring an action in courts of general jurisdiction." *Moore v. Lindsey*, 662 F.2d 354, 361 (5th Cir. 1981). However, there is no indication that an action to remove an administrator may be brought in a Mississippi state court of general jurisdiction. Rather, it is "the chancery court [that] is given wide discretion in the appointment *and revocation* of administrators ...." *Estate of Wallace ex rel. Wallace v. Mohamed*, 55 So.3d 1057, 1060 (Miss. 2011).

Furthermore, while the Mississippi Supreme Court has held that "a judgment obtained by fraud may be collaterally attacked, and this applies to the judgments and decrees of all courts," *City of Starkville v. Thompson*, 260 So.2d 191, 192 (Miss. 1972) (internal punctuation omitted); the Court is aware of no authority which would authorize a collateral attack on a letter of administration while the estate is open. To the contrary, where a defendant in a wrongful death action wishes to challenge an administrator's authority to bring an action, the proper course is to do so by intervention in the chancery court. *See generally Mohamed*, 55 So.3d at 1060 (defendant in wrongful death action brought in chancery court as separate challenge to administrator's appointment based on alleged fraud). *See Jones*, 55 F.Supp.2d at 533 ("While state circuit courts may remove personal representatives for failing to pursue wrongful death claims, the probate exception prevents this federal Court from interfering with *an open state probate proceeding* by removing and directing the appointment of a new personal representative.") (emphasis added).

[8] The Chancery Court issued a determination of heirs. Diana has not argued that this determination is binding on the defendants. Accordingly, the Court will not apply collateral estoppel to the Chancery Court's determination. *See*

apply "even though the judgment may be intertwined with and binding on … state proceedings …." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007). Rather, "so long as [an action] is not seeking to have a federal court administer a probate matter or exercise control over a res in the custody of a state court," the probate exception does not apply. *Id*. Consistent with this rule, federal courts routinely consider whether litigants qualify as wrongful death beneficiaries under state statutes. *See, e.g., Matter of Borgmann*, 176 B.R. 172, 175 (Bankr. D. Neb. 1994) ("[T]he debtors in this case do not qualify as beneficiaries or as surviving dependents of the beneficiary …."); *Melvin v. Patterson*, 965 F.Supp. 1212, 1220 (S.D. Ind. 1997) (concluding child not wrongful death beneficiary). Diana's right to recover under the wrongful death statute is not a matter of administration over a probate matter or control over a res and, therefore, does not implicate the probate exception.

### B. Statutory Standing

Having found that this Court has jurisdiction to consider Diana's statutory standing as a wrongful death beneficiary, the Court must next consider whether Diana qualifies as such a beneficiary. Of relevance here, the wrongful death statute authorizes a "widow" to bring a wrongful death action for the death of her husband. *See Kelly*, 60 So.3d at 156. Accordingly, the burden rests with Diana to show that she was married to Johnny at the time of his death. *Alliance Healthcare Servs., Inc.*, 778 F.3d at 504. To this end, "the law favors marriage and will indulge every reasonable presumption in favor of the validity thereof." *Walker v. Matthews*, 3 So.2d 820, 823–24 (Miss. 1941).[9]

---

*Campbell v. City of Indianola*, 117 F.Supp.3d 854, 864–65 (N.D. Miss. 2015) ("[C]ourts have held that the party asserting collateral estoppel bears the burden of establishing the doctrine's requirements.").

[9] "[I]n a diversity tort case the applicability of any presumption … is governed by state law." *Clayton v. Burston*, 493 F.2d 429, 431 (5th Cir. 1974).

While Diana testified that she was married to Johnny in Arkansas in 1995, the defendants have introduced evidence, described above, severely undermining this claim. Diana has offered no additional argument or evidence which would show she was ever married to Johnny. Under these circumstances, the Court must conclude that Diana has failed to show that she is Johnny's widow. Accordingly, her claim as a wrongful death beneficiary must be dismissed for lack of statutory standing. Such dismissal will be without prejudice and with leave to amend within twenty-one days of this order. *See Freight Drivers and Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, No. ELH-12-2376, 2013 WL 3895011, at *14 (D. Md. July 25, 2013) (dismissing without prejudice complaint for lack of statutory standing with leave to amend to add proper plaintiff); *Alliance Labs, LLC v. Stratus Pharms., Inc.*, 2013 WL 273309, at *6 (D. Ariz. Jan. 24, 2013) (same). Having dismissed the operative complaint in this action, the defendants' motions for partial summary judgment, Doc. #50; Doc. #69, will be denied as moot.

## IV
## Conclusion

For the reasons above, the defendants' motion to dismiss for lack of subject matter jurisdiction, which this Court construes as a motion to dismiss for failure to state a claim for statutory standing [67] is **GRANTED**. The second amended complaint [62] is **DISMISSED without prejudice**, with leave to refile within twenty-one (21) days of the issuance of this order. The defendants' motions for partial summary judgment [50][69] are **DENIED as moot**.

**SO ORDERED**, this 19th day of January, 2017.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**