# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**AMESHA MYLES, et al.**                                                              **PLAINTIFF**

**V.**                                                          **NO. 4:14-CV-00107-DMB-JMV**

**DOMINO'S PIZZA, LLC, et al.**                                                    **DEFENDANTS**

## ORDER DENYING RECONSIDERATION

This wrongful death action is before the Court on the "Motion to Alter, Amend, or Vacate" filed by Amesha and Kaquisha Myles regarding this Court's January 19, 2017, memorandum opinion and order. Doc. #86. Because the motion states no grounds for this Court to modify its January 19 ruling, the motion will be denied.

## I
## Procedural History

On January 19, 2017, this Court entered a memorandum opinion and order dismissing the second amended complaint in this action brought by "Diana Myles, Individually, And As Administrator Of The Estate Of Johnny Lee Myles, And For And On Behalf Of All Other Parties Entitled To Recover For The Wrongful Death Of Johnny Lee Myles, Deceased," "with leave to refile within twenty-one (21) days of the issuance of this order." Doc. #77. In its order, the Court held that claims brought by Diana as Administratrix of the estate were barred by the probate exception to federal jurisdiction because such claims were subject to a defense, supported by sufficient evidence, which required the Court to evaluate the validity of state probate proceedings. *Id*.

On February 9, 2017, "Amesha Myles and Kaquisha Myles On Behalf Of All Other Parties Entitled To Recover For The Wrongful Death of Johnny Lee Myles, Deceased" filed a third amended complaint. Doc. #80. On February 16, 2017, the plaintiffs, arguing that this

Court misapplied the probate exception, filed the instant motion seeking modification of the Court's January 19 ruling. Doc. #86. The defendants responded in opposition on March 2, 2017. Doc. #90. The plaintiffs replied on March 13, 2017.[1] Doc. #95.

## II
## Standard of Review

The plaintiffs' motion seeks relief under Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure. Doc. #86 at 2.

Under Fifth Circuit jurisprudence:

> A Rule 59(e) motion "calls into question the correctness of a judgment." This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (internal citations omitted). "A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotation marks omitted).

---

[1] The plaintiffs' reply to the defendants' electronically-served response is untimely. Local Rule 7(b)(4) mandates that "[c]ounsel for movant desiring to file a rebuttal may do so within seven days after the service of the respondent's response and memorandum brief." While under the pre-amendment version of Federal Rule of Civil Procedure 6(d) 3 days were added to this period, the amended version of Rule 6(d) which went into effect December 1, 2016, removed service by electronic means from the modes of service that allow 3 additional days. Only because the amended version of Rule 6(d) had been in effect for approximately three months when the plaintiffs filed their reply, the Court will consider the plaintiffs' reply. Counsel for all parties are encouraged to review the December 1, 2016, amendments to the Federal Rules and the Court's local rules.

Under Federal Rule of Civil Procedure 60(b), a court may relieve a party from a final judgment on the basis of a "mistake." "[I]n this circuit, the rule may be invoked for the correction of judicial error, but only to rectify an obvious error of law, apparent on the record." *Hill v. McDermott, Inc.*, 827 F.2d 1040, 1043 (5th Cir. 1987).

### III
### Analysis

"Federal jurisdiction ordinarily exists over lawsuits that could have been brought in a state court, so long as complete diversity of citizenship and the requisite amount in controversy are present. For compelling historical reasons, however, a federal court has no jurisdiction to probate a will or administer an estate." *Breaux v. Dilsaver*, 254 F.3d 533, 536 (5th Cir. 2001). The Seventh Circuit has identified four rationales for application of the probate exception: (1) a historical argument, that probate matters "were not included in the Judiciary Act's grant of jurisdiction to the federal courts" (2) "the need for legal certainty concerning whether probate matters and will contests should be in state or federal courts;" (3) advancing judicial economy by allowing "questions as to a will's validity [to] be resolved concurrently with the task of estate administration;" and (4) "to avoid unnecessary interference with state probate proceedings." *Georges v. Glick*, 856 F.2d 971, 973–74 (7th Cir. 1988).

The probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). Put differently, it removes from federal court jurisdiction "proceedings that 'interfere with' state probate proceedings, assume general jurisdiction of the probate, or assume control of property in the custody of the

probate court." *Lemery v. Ford Motor Co.*, 244 F.Supp.2d 720, 725 (S.D. Tex. 2002) (collecting cases). "In determining whether a suit in federal court 'interferes' with state probate proceedings, this court considers whether the plaintiff's claim implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties." *Dilsaver*, 254 F.3d at 536.

In its memorandum opinion, this Court held that Diana's claims as Administratrix were barred by the probate exception because the defendants asserted a defense, supported by sufficient evidence, that Diana obtained her appointment as Administratrix through fraud. Doc. #77 at 11–13. The Court reached this conclusion because, insofar as Mississippi law requires that orders obtained through fraud be voided, consideration of Diana's claims as Administratrix would have placed the Court in the position of invalidating the Chancery Court's appointment of Diana as Administratrix, an action clearly barred by the probate exception. *Id.* As support for its analysis, the Court relied on *Berman v. Berman*, No. 07-2506, 2009 WL 1617758, at *1 (D.N.J. June 9, 2009), in which a court found a claim fell within the probate exception based on an asserted defense. Doc. #77 at 9–10.

In their motion, the plaintiffs argue the Court erred in holding that a defense can cause a claim to fall under the probate exception because: (1) "[t]he Fifth Circuit has held that it is the plaintiff's claim, or cause of action, that is considered in determining whether the probate exception applies;" (2) Diana's appointment as personal representative lessened "the danger of federal interference" with state probate proceedings; and (3) this Court improperly relied on *Berman*.[2] *Id.* at 3–4.

---

[2] In their reply brief, the plaintiffs also argue that the Court erred in concluding that Diana lacked statutory standing to pursue the claims as Administratrix. Doc. #95 at 3. The plaintiffs further argue that Diana "has an equitable right to pursue a wrongful death action under Mississippi law based on her standing with the two statutorily-provided

4

### A. Focus on Claim

The plaintiffs first argue that the Fifth Circuit's dictate that a court must decide "whether the plaintiff's claim implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties" limits the inquiry of the probate exception to the claim itself. Doc. #86 at 2–3 (quoting *Dilsaver*). While the Court agrees that it is the claim that forms the center of the inquiry, nothing in *Dilsaver* (or indeed in any case of which the Court is aware) suggests that the inquiry of whether a "claim implicates the validity of the probate proceedings" cannot consider relevant defenses. Indeed, the only court to directly address the issue—*Berman*, discussed below—has specifically rejected this view. Furthermore, for the reasons stated in this Court's memorandum opinion and order, the Court believes that, to give effect to at least three of the purposes of the probate exception (advancing judicial economy, providing "certainty concerning whether probate matters ... should be in state or federal courts," and avoiding interference with state probate proceedings), consideration of such defenses is required. An alternative rule would allow a court to do what it cannot under the probate exception (such as removing a personal representative) merely because the relief is implicated in a defense rather than a claim. Nothing in the relevant case law suggests that application of the probate exception rests on such a fine distinction.[3]

---

categories of potential litigants beyond a widow." *Id*. at 8. These arguments, which were not included in the original motion for reconsideration, are deemed waived. *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F.Supp.3d 795, 811 (E.D. Tex. 2014) ("Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late."). The Court notes, however, that nothing in this Court's opinion bars Diana from asserting wrongful death claims based on a relationship to the deceased not derived from the status of a personal representative or widow.

[3] In reaching this conclusion, the Court notes that the Fifth Circuit has used similar claimed-based language to refer to the reach of the political question doctrine, which involves an inquiry into relevant asserted defenses. *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (noting "the purpose of the political question doctrine is to bar claims that have the potential to undermine the separation-of-powers design of our federal government" but holding "[w]e must look beyond the complaint, considering how the Plaintiffs might prove their claims *and* how [defendant] would defend"). There is also a practical reason why an evaluation of the probate exception's application should not be

5

### B. Appointment of Diana

Next, quoting *Dilsaver*, the plaintiffs argue:

> Once determinations are made that are exclusively within the jurisdiction of a state's probate court, "the danger of federal interference is abated and an action by a … heir, or other claimant … becomes a suit between the parties that is a justiciable controversy within the scope of federal jurisdiction if the other jurisdictional requirements are met. *Id.* Thus, once Diana was appointed the personal representative by the only court empowered to do so, the Chancery Court of Bolivar County, Mississippi, the danger of federal interference and invocation of the probate exception were abated.

Doc. # 86 at 3. This argument drastically misrepresents the quoted language in *Dilsaver*, which reads in full:

> *Once a will has been probated*, the danger of federal interference is abated and "an action by a legatee, heir, or other claimant against an executor becomes a suit between the parties that is a justiciable controversy within the scope of federal jurisdiction if the other jurisdictional requirements are met.

254 F.3d at 537 (internal quotation marks omitted, emphasis added). At most, this language supports a finding that, once an estate has been closed, the reach of the probate exception is lessened. In this case, it does not appear there is a will to probate. Furthermore, the relevant estate remains open. Accordingly, the danger of federal interference remains great such that the plaintiffs' argument is rejected.

### C. Application of *Berman*

Finally, the plaintiffs argue that *Berman* does not stand "for the position that a defense to a plaintiff's claim may bring the plaintiff's claim itself within the scope of the probate exception. Doc. #86 at 3. In their motion and reply, the plaintiffs argue that the Court misinterpreted *Berman* because *Berman*: (1) involved a counterclaim and an affirmative defense; (2) was

---
limited to just the plaintiff's claim. If the parties proceeded to litigate to conclusion the claims of a plaintiff whose status is voidable by a state court, the parties' time, effort and expense would have been wasted in obtaining a merits ruling which is subject to being nullified. Although here, there are other plaintiffs with statutory standing to pursue the claims, that is not, and will not, always be the case.

decided under a different prong of the probate exception, one related to the annulment of a will; and (3) was a removal case.

### 1. Existence of counterclaim

The plaintiffs contend:

> The defendants in *Berman* sought removal of the case to federal court wherein, as this Court noted, the defendants asserted as an "affirmative defense **and counterclaim** that the will which formed the basis of the plaintiff's claims 'was the product of undue influence by Plaintiff ….'" *Id*. (emphasis added). The defendants in *Berman* sought removal to federal court, while simultaneously raising a defense **and counterclaim** barred by the probate exception, which distinguishes Berman from the instant case.

*Id*. at 3–4.

The plaintiffs are correct that the defendants in *Berman* raised a counterclaim. However, the counterclaim was not the basis for the invocation of the probate exception. To the contrary, the court specifically noted that it was the "affirmative defense, premised upon the annulment of the will, [which] defeats jurisdiction of this Court …." 2009 WL 1617758, at *9. Accordingly, the assertion of error is without merit.

### 2. Annulment of will

The plaintiffs, in their reply, further attempt to distinguish *Berman* by arguing that:

> the court in *Berman* also emphasized that the probate exception was separately applicable because the "existence of a probated will is also essential to [the] Plaintiff's claims," and that matters invoking the probate exception would "have to be decided in the Plaintiff's case" regardless of any of the defendant's defenses. [*Id*. at *7]. As such, the court's ruling that the probate exception divested it of jurisdiction entirely, was not solely the product of the defendant's defenses, but also because "adjudication of this dispute would call upon the [c]ourt to consider whether or not to annul a will." [*Id*. at *7 (*citing Three Keys*, 540 F.3d at 227) (internal quotation marks omitted)]. The *Berman* decision lends little if any support to the position that an asserted defense in the form of a factual dispute regarding the appointment of an Administratrix invoked the probate exception sufficient to entirely divest a federal court of subject matter jurisdiction.

7

Doc. #95 at 4–5. The plaintiffs further note that this focus fell "under the 'prong' of the probate exception that concerns attempts to 'probate or annul a will' rather than to administer a decedent's estate." *Id*. Thus, the plaintiffs seem to argue that *Berman* is inapposite because the *Berman* court: (1) did not rely exclusively on the asserted defense; and (2) based its decision on a different "prong" of the probate exception than at issue here.

### a. Asserted defense

In addressing the plaintiffs' first contention, the Court begins by noting that the district court in *Berman* held that the "defendants' affirmative defense, premised upon the annulment of the will, defeat[ed] jurisdiction of th[e] Court" because "adjudication of th[e] case would call upon the Court to determine whether or not to 'annul a will,' a determination which this Court lacks jurisdiction to entertain." 2009 WL 1617758, at *2 (internal citation omitted). In reaching this conclusion, the court noted that it would not "make sense to dismiss only the Defendants' affirmative defenses premised upon annulment, since the existence of a probated will is also essential to Plaintiff's claims herein; annulment would necessarily have to be decided in Plaintiff's case whether or not the affirmative defenses were dismissed." *Id*. At most, this line of reasoning suggests that, while a defense may bring a claim within the probate exception, it may be appropriate to dismiss an affirmative defense (rather than a claim) where the asserted defense does not relate to an essential element of a plaintiff's claim.

Here, to the extent Mississippi's wrongful death statute only authorizes suits on behalf of certain individuals, the validity of Diana's appointment as personal representative is clearly essential to her wrongful death claim brought as Administratrix of Johnny's estate. *See Estate of Wallace v. Mohamed*, 68 So.3d 57, 58 (Miss. 2011) ("The circuit court correctly dismissed Wallace from the circuit court [wrongful death] action, for he was neither a personal

8

representative of the estate nor a wrongful death beneficiary."). Due to the defendants' defense that Diana obtained her appointment through fraud, resolution of Diana's claims as Administratrix would require this Court to pass on the propriety of the Chancery Court's appointment of Diana as Administratrix and, possibly, to invalidate such an appointment. Because removal of a personal representative falls squarely within the probate exception, this Court holds that the defense to Diana's claims as Administratrix causes such claims to fall within the probate exception to federal jurisdiction.

### b. *Probate prong*

As this Court previously explained, "[t]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate." Doc. #77 at 12 (quoting *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006)). While it is true that *Berman* invoked the probate exception's will prong (as opposed to the administration prong at issue here), the Court finds this distinction of little note. Absolutely nothing in the *Berman* opinion suggests that the result would have differed if the prohibited action fell under the administration prong instead of the probate prong.

### 3. Removal

Finally, seizing on the *Berman* court's note that a finding of lack of jurisdiction "is especially appropriate in the context of removal jurisdiction [where d]efendants, as the parties removing this case ... bear the burden of establishing federal court jurisdiction," the plaintiffs argue "*Berman* ... is also distinguishable in that the defendants sought to remove the case to federal court, while simultaneously raising counterclaims and affirmative defenses that could only be addressed by the probate court." Doc. #95 at 5–6. The Court agrees that a finding of lack of jurisdiction based on an asserted defense may be "especially appropriate" in the context

of removal. However, nothing in *Berman* suggests that such a finding is *inappropriate* in the non-removal context. A federal court's subject matter jurisdiction does not depend on whether a case was originally filed in federal court or was removed. *See George v. Bordem Chems. & Plastics Operating Ltd. P'ship*, 960 F.Supp. 92, 94 (M.D. La. 1997) ("Congress made the removal jurisdiction of the federal district courts coextensive with the federal district court's original jurisdiction.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)). Thus, the plaintiffs' removal argument too is unconvincing.

## IV
## Conclusion

The Court concludes for the reasons above that the plaintiffs have not shown an error in law which would justify amendment of this Court's January 19 memorandum opinion and order in this case. Accordingly, the plaintiffs' motion [86] is **DENIED**.

**SO ORDERED**, this 15th day of March, 2017.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**